Case 5:21-cv-01590-HNJ   Document 1   Filed 11/30/21   Page 1 of 15            FILED
                                                                       2021 Nov-30  PM 03:54
                                                                       U.S. DISTRICT COURT
                                                                          N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **BMO HARRIS BANK N.A.**, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) |
| | ) Case No. _____ |
| **WOHALI, INC.**, an Alabama corporation, **JESSE THIGPEN**, an individual, and **JEFFREY RUTHERFORD**, an individual, | ) ) ) ) ) |
| **Defendants.** | ) |

## VERIFIED COMPLAINT FOR MONEY JUDGMENT
## [BREACH OF CONTRACT]

Plaintiff BMO Harris Bank N.A., by and through its undersigned counsel, complains of defendants Wohali, Inc., Jeffrey Rutherford, and Jesse Thigpen, as follows:

### I.   THE PARTIES

1.   Plaintiff BMO Harris Bank N.A. (the "Bank") is a national banking association with a principal place of business located at 111 W. Monroe Street, Chicago, Illinois 60694.

2.   Defendant Wohali, Inc. ("Borrower") is a corporation, with a principal place of business at 13405 Court Street, Moulton, Alabama 35650 and a registered agent address of 184 Turtle Lane, Houston, Alabama 35572, c/o Jeffrey Rutherford.

3. Defendant Jeffrey Rutherford is an individual residing, upon information and belief, at 1286 Maple Street, Killen, Alabama 35645.

4. Defendant Jesse Thigpen (together, with Jeffrey Rutherford, the "Guarantors") is an individual residing, upon information and belief, at 1286 Maple Street, Killen, Alabama 35645.

## II. JURISDICTION AND VENUE

5. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a) because the Bank and Borrower and Guarantors (collectively, the "Defendants") are of diverse citizenship and the amount in controversy exceeds the sum of $75,000.00 exclusive of interest and costs.

6. Venue is appropriate in the northern District of Alabama pursuant to 28 U.S.C. § 1391(b) because the State of Alabama is where a substantial portion of the facts giving rise to the causes of action set forth in this Verified Complaint occurred, and Defendants reside in Alabama.

## III. FACTUAL BACKGROUND

### A. The First Lease Agreement

7. On February 5, 2019, Borrower and Bank entered into that certain Master Vehicle Lease Agreement (the "First Lease Agreement"), pursuant to which Bank leased to Borrower three (3) 2020 International LT Series identified by serial numbers 3HSDZTZR0LN829051; 3HSDZTZR2LN829052; and

3HSDZTZR4LN829053 (the "First Lease Collateral").  Borrower promised to pay Bank forty-eight (48) monthly rent payments of $8,439.57 each, commencing on April 5, 2019, and continuing on the like date of each month thereafter. A true and correct copy of the Lease Agreement is attached hereto as **Exhibit A** and incorporated herein.

8. The Master Lease Agreement together with each Schedule constitute an equipment lease.

9. Bank perfected its security interest in and to the Master Lease Collateral by possession of original Certificate of Title for the First Lease Collateral and recording its liens with the Alabama Department of Revenue.  True and correct copies of the Certificates of Title are hereto as **Exhibit B** and incorporated herein.

10. As further consideration for entering into the Master Lease Agreement, on or about February 5, 2019, Jeffrey Rutherford executed a certain Continuing Guaranty in favor of Bank absolutely and unconditionally guarantying Borrower's present and future obligations to Bank, including those obligations under the First Lease Agreement (the "Rutherford Guaranty").  A true and correct copy of the Rutherford Guaranty is attached hereto as **Exhibit C** and incorporated herein.

11. As further consideration for entering into the First Lease Agreement, on or about February 5, 2019, Jesse Thigpen executed a certain Continuing Guaranty in favor of Bank absolutely and unconditionally guarantying Borrower's present and

future obligations to Bank, including those obligations under the Lease Agreement (the "Thigpen Guaranty"). A true and correct copy of the Thigpen Guaranty is attached hereto as **Exhibit D** and incorporated herein.

12. On or about November 23, 2020, Borrower and Bank entered into a Modification Agreement (the "Fist Modification Agreement") which modified the terms of the First Lease Agreement, as more fully described therein. A copy of the First Modification Agreement is attached hereto as **Exhibit E**.

### B. The Second Lease Agreement

13. On February 5, 2019, Borrower and Bank entered into that certain Schedule A Even Payments (the "Second Lease Agreement"), pursuant to which Bank leased to Borrower two (2) 2020 International LT Series identified by serial numbers 3HSDZTZR7LN829046 and 3HSDZTZR9L1829047 (the "Second Lease Collateral"). Borrower agreed to pay Bank forty-eight (48) monthly rent payments of $2,891.93 each, commencing on April 5, 2019 and continuing fifth day of each month thereafter. A true and correct copy of the Second Lease Agreement is attached hereto as **Exhibit F** and incorporated herein.

14. Bank perfected its security interest in and to the Second Lease Collateral by possession of original Certificates of Title for the Second Lease Collateral and recording its liens with the Alabama Department of Revenue. True

and correct copies of the Certificates of Title are hereto as **Exhibit G** and incorporated herein.

15. As further consideration for entering into the Second Lease Agreement, on or about February 5, 2019, Jeffrey Rutherford executed a certain Continuing Guaranty in favor of Bank absolutely and unconditionally guarantying Borrower's present and future obligations to Bank, including those obligations under the Second Lease Agreement. *See* Rutherford Guaranty, Ex. C.

16. As further consideration for entering into the Second Lease Agreement, on or about February 5, 2019, Jesse Thigpen executed a certain Continuing Guaranty in favor of Bank absolutely and unconditionally guarantying Borrower's present and future obligations to Bank, including those obligations under the Second Lease Agreement. *See* Thigpen Guaranty, Ex. D.

17. On or about November 23, 2020, Borrower and Bank entered into a Modification Agreement (the "Second Modification Agreement") which modified the terms of the Second Lease Agreement, as more fully described therein. A copy of the Second Modification Agreement is attached hereto as **Exhibit H.**

### C. The Third Lease Agreement

18. On March 27, 2019, Borrower and Bank entered into that certain Schedule A Even Payments (the "Third Lease Agreement"), pursuant to which Bank leased to Borrower one (1) 2020 International LT Series identified by serial number

3HSDZTZR6LN857713 (the "Third Lease Collateral").  Borrower agreed to pay Bank forty-eight (48) monthly rent payments of $2,860.75 each, commencing on May 10, 2019 and continuing tenth day of each month thereafter.  A true and correct copy of the Lease Agreement is attached hereto as **Exhibit I** and incorporated herein.

19. Bank perfected its security interest in and to the Third Lease Collateral by possession of original Certificate of Title for the Third Lease Collateral and recording its lien with the Alabama Department of Revenue.  A true and correct copy of the Certificate of Title is hereto as **Exhibit J** and incorporated herein.

20. As further consideration for entering into the Third Lease Agreement, on or about February 5, 2019, Jeffrey Rutherford executed a certain Continuing Guaranty in favor of Bank absolutely and unconditionally guarantying Borrower's present and future obligations to Bank, including those obligations under the Third Lease Agreement. *See* Rutherford Guaranty, Ex. C.

21. As further consideration for entering into the Third Lease Agreement, on or about February 5, 2019, Jesse Thigpen executed a certain Continuing Guaranty in favor of Bank absolutely and unconditionally guarantying Borrower's present and future obligations to Bank, including those obligations under the Third Lease Agreement. *See* Thigpen Guaranty, Ex. D.

22. On or about November 23, 2020, Borrower and Bank entered into a Modification Agreement (the "Third Modification Agreement") which modified the

terms of the Third Lease Agreement, as more fully described therein. A copy of the Third Modification Agreement is attached hereto as **Exhibit K.**

23. Hereinafter, the First Lease Agreement, Second Lease Agreement, and Third Lease Agreement are referred to collectively as the "Lease Agreement", and the First Lease Collateral, Second Lease Collateral, and Third Lease Collateral are referred to collectively as the "Collateral."

### D. Default Provisions

24. Pursuant to the Lease Agreement, an Event of Default shall occur if, *inter alia*, Borrower fails to pay when due any amount owed to Bank under the Lease Agreement. *See* Lease Agreement § 15.

25. Pursuant to the Lease Agreement, upon the occurrence of an Event of Default, Bank is entitled to monetary damages from Borrower as a result of Borrower's breach, which amounts shall include all unpaid monthly rentals, additional rents and adjusted rents then due and owing together will all costs and expenses incurred by Plaintiff in the enforcement of its rights and remedies under the Lease Agreement. *See* Lease Agreement § 16.

26. Upon the delinquency of Borrower's obligations under the Lease Agreement, interest on all sums then owing shall accrue at the rate of 1½% per month. *See* Lease Agreement § 16.

27. Pursuant to the Lease Agreement, Borrower is obligated to pay Bank all expenses of retaking, holding, preparing for sale, selling and the like of the Collateral, including without limitation (a) the reasonable fees of any attorneys retained by Bank and (b) all other legal expenses incurred by Bank. *See id.*

28. Borrower is liable to Bank for any deficiency remaining after disposition of the Collateral after default. *See id.*

29. Upon acceleration of Borrower's obligations under the Lease Agreement, interest on all sums then owing shall accrue at the rate of 1½% per month. *See id.*

30. Pursuant to the terms of the Lease Agreement, Borrower waived its right to a jury trial of any claim or cause of action relating thereto. *See* Lease Agreement § 26.

31. Pursuant to the terms of the Rutherford Guaranty, Jeffrey Rutherford waived his right to a jury trial of any claim or cause of action relating thereto. *See* Rutherford Guaranty.

32. Pursuant to the terms of the Thigpen Guaranty, Jesse Thigpen waived his right to a jury trial of any claim or cause of action relating thereto. *See* Thigpen Guaranty.

### E. The Payment Defaults

33. Borrower is in default under the terms and conditions of the Lease Agreement, having failed, *inter alia*, to make payments when due thereunder.

34. Jeffrey Rutherford is in default under the terms and conditions of the Rutherford Guaranty, having failed to make payments when due thereunder.

35. Jesse Thigpen is in default under the terms and conditions of the Thigpen Guaranty (collectively with the Rutherford Guaranty, the "Guarantees"), having failed to make payments when due thereunder.

36. Bank has performed any and all obligations to be performed by it under the terms of the Lease Agreement and the Guarantees.

37. On July 9, 2021 and July 19, 2021, Bank notified Defendants of the default status of the Lease Agreement (the "First Default Notices") and demanded payment in full on the Lease Agreement. True and correct copies of the First Default Notices are attached hereto as **Exhibit L** and incorporated herein.

38. On October 20, 2021, Bank again notified Defendants of the default status of the Lease Agreement (the "Second Default Notices," together with the First Default Notices, the "Default Notices") and demanded payment in full on the Lease Agreement. True and correct copies of the Second Default Notices are attached hereto as **Exhibit M** and incorporated herein.

39. At the time of filing of this Complaint, Defendants have not cured the default under the Lease Agreement and the Guarantees, as set forth in the Default Notices.

40. Due to these defaults and pursuant to the express terms of the Lease Agreement and Guarantees, Bank is entitled to contractual money damages as set forth therein.

41. As of October 6, 2021, 2021, the balance due under the Lease Agreement was not less than $207,675.81.

### F. Bank's Damages

42. The Bank has recovered certain amounts owed to it by Defendants by liquidating the Collateral. The proceeds of these sales have been applied to the obligations under the Lease Agreement.

43. As a result of the breaches by Defendants under the Lease Agreement and Guarantees, Bank has been damaged in an aggregate amount equal to not less than $207,675.81 as of October 6, 2021.

44. The Lease Agreement permits Bank to collect, as additional damages, its attorneys' fees and costs of collection incurred in relation to the Lease Agreement and the Collateral. *See* Lease Agreement, § 16(c).

## COUNT I – BREACH OF CONTRACT
### (Borrower)

45. Bank hereby incorporates by reference and realleges the factual allegations contained in the preceding paragraphs.

46. Bank has performed all terms and conditions of the Lease Agreement to be performed by Bank.

47. In contrast, Borrower has not performed under the Lease Agreement and has failed to make payments to Bank under the Lease Agreement when due.

48. Under the Lease Agreement, Bank is entitled to contractual money damages from Borrower as provided therein.

49. The amount due under the Lease Agreement as of October 6, 2021, was not less than $207,675.81, which amount is immediately due and owing from Borrower, together with interest on and after October 6, 2021, at the default rate specified in the Lease Agreement.

50. The Lease Agreement provides that Bank shall recover its attorneys' fees, costs of collection, and interest on all unpaid amounts due and owing.

WHEREFORE, Bank prays that this Court enter a judgment in its favor and against Borrower in the amount due under the Lease Agreement, the exact amount to be proven at or before trial, plus its attorneys' fees, costs, penalties, and interest, together with such other and further relief as shall be just and equitable.

## COUNT II – BREACH OF GUARANTY
### (Jeffrey Rutherford)

51. Bank hereby incorporates by reference and realleges the factual allegations contained in the preceding paragraphs.

52. Bank has performed all terms and conditions of the Rutherford Guaranty to be performed by Bank.

53. Under the Rutherford Guaranty, Jeffrey Rutherford is liable for all amounts due to Bank under the Lease Agreement.

54. Jeffrey Rutherford is in default under the terms and conditions of the Rutherford Guaranty, having failed to make payments thereunder.

55. As a direct and proximate result of Jeffrey Rutherford's breach of the Rutherford Guaranty, Bank has incurred and continues to incur substantial damages.

56. The Lease Agreement and Rutherford Guaranty provide that Bank shall recover its attorneys' fees, costs of collection, and interest on all amounts due and owing.

57. Bank has been required to retain the services of counsel to prosecute this claim and is therefore entitled to an award of attorneys' fees and costs.

WHEREFORE, Bank prays that this Court enter a judgment in its favor and against Jeffrey Rutherford in the amount due under the Rutherford Guaranty, the exact amount to be proven at or before trial, together with such other and further relief as shall be just and equitable.

## COUNT III – BREACH OF GUARANTY
### (Jesse Thigpen)

58. Bank hereby incorporates by reference and realleges the factual allegations contained in the preceding paragraphs.

59. Bank has performed all terms and conditions of the Thigpen Guaranty to be performed by Bank.

60. Under the Thigpen Guaranty, Jesse Thigpen is liable for all amounts due to Bank under the Lease Agreement.

61. Jesse Thigpen is in default under the terms and conditions of the Thigpen Guaranty, having failed to make payments thereunder.

62. As a direct and proximate result of Jesse Thigpen's breach of the Thigpen Guaranty, Bank has incurred and continues to incur substantial damages.

63. The Lease Agreement and Thigpen Guaranty provide that Bank shall recover its attorneys' fees, costs of collection, and interest on all amounts due and owing.

64. Bank has been required to retain the services of counsel to prosecute this claim and is therefore entitled to an award of attorneys' fees and costs.

WHEREFORE, Bank prays that this Court enter a judgment in its favor and against Jesse Thigpen in the amount due under the Thigpen Guaranty, the exact amount to be proven at or before trial, together with such other and further relief as shall be just and equitable.

**RESPECTFULLY SUBMITTED** this the 30th day of November, 2021.

  /s/ David W. Langston
David W. Langston     ASB-4458-N64D
Zachary H. Starnes     ASB-7600-C00Q
*Counsel for Plaintiff BMO Harris Bank N.A.*

**OF COUNSEL:**
HARRIS, CADDELL & SHANKS, P.C.
214 Johnston Street SE
Decatur, Alabama 35601
Telephone: (256) 340 – 8048
Facsimile: (256) 340 – 8039
dlangston@harriscaddell.com
zstarnes@harriscaddell.com

## VERIFICATION

STATE OF IOWA           )
                        )
COUNTY OF LINN          )

Under penalties of perjury, I declare that I have read the foregoing Verified Complaint and that the facts stated in it are true. I further declare that: My name is Debb White, I am a litigation specialist of plaintiff, BMO Harris Bank N.A. (the "Bank"), I have authority to make this Verification on the Bank's behalf, and this Verification is made based on my personal knowledge and as facts appear in the business records of the Bank.

_____
Debb White
Litigation Specialist
BMO Harris Bank N.A.

Sworn and subscribed before me this __4__ day of October, 2021, by Debb White, as Litigation Specialist of BMO Harris Bank N.A. and on its behalf, who (✓) is personally known to me or (__) has produced _____ as identification.

**MICKI S KOEPKE**
Notarial Seal - Iowa
Commission No. 826748
My Commission Expires Oct. 01, 2023

_____
Notary Public, State of Iowa
Printed Name: Micki Koepke
Commission No.: 826748
My commission expires: 10-1-23